**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JOHN ANTHONY CASTRO,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>INTERNAL REVENUE SERVICE,<br><br>　　　Defendant | Civil Action No. 20-1843 (CKK) |

**MEMORANDUM OPINION**
(March 22, 2022)

This lawsuit arises from a Freedom of Information Act ("FOIA") request made by Plaintiff John Anthony Castro ("Plaintiff") to Defendant Internal Revenue Service ("IRS" or "Defendant"). Plaintiff sought records regarding the cancellation and subsequent reinstatement of his credential to serve as an Enrolled Agent, representing taxpayers before the IRS. Currently before the Court are Defendant IRS's [13] Motion for Summary Judgment and Plaintiff's [17] Cross-Motion for Summary Judgment. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as whole, for the reasons stated below, the Court shall **GRANT** the IRS's Motion for Summary Judgment and shall **DENY** Plaintiff's Cross-Motion for Summary Judgment.

---

[1] The Court's consideration has focused on the following pleadings and their attachments:
- Defendant's Motion for Summary Judgment ("Def.'s Mot."), ECF No. 13;
- Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Cross-Mot. & Opp'n"), ECF No. 17;
- Defendant's Combined Reply in Support of Motion for Summary Judgment and in Opposition to Plaintiff's Cross-Motion for Summary Judgment ("Def.'s Reply & Opp'n"), ECF No. 19; and
- Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Reply to Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Reply"), ECF No. 21.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. See LCvR 7(f).

# I.    BACKGROUND

The Internal Revenue Service ("IRS") authorizes qualified individuals to serve as "Enrolled Agents," who may represent taxpayers before the IRS. *See* Def.'s Mot. at 1.[2]  EAs must periodically renew their status and complete continuing education requirements to maintain their credential.[3]

Plaintiff John Anthony Castro is an Enrolled Agent of the IRS.   Compl. ¶ 2, ECF No. 1. Plaintiff alleges that his "license as an enrolled agent was impermissibly cancelled and later reinstated by the IRS."[4]  *Id.*  He claims that in June 2019, he was told to contact an IRS employee named "Tony Woods" in the Office of Professional Responsibility about an "issue with [his] EA license."  Pl.'s Decl. ¶ 34.  The employee with whom Plaintiff spoke purportedly told him that he needed to submit evidence of completed continuing legal education requirements. *Id.* ¶ 36.  He claims that his EA status was "inexplicably and unjustifiably suspended by the IRS," but that he was not informed of this change in status. *Id.* ¶ 38.  Plaintiff then indicates that his EA license was "unexpectedly reinstated" as of January 31, 2020. *Id.* ¶ 40.

Plaintiff filed two FOIA requests to "learn more about the records that the IRS has on the activities in connection this matter." Compl. ¶ 2.  Plaintiff's first FOIA request, dated March 27, 2020 ("First FOIA Request") sought the following records:

---

[2]  *See* IRS, Enrolled Agent Information, https://www.irs.gov/tax-professionals/enrolled-agents/enrolled-agent-information (last visited March 22, 2022).

[3]  *See id.*; IRS, Maintain Your Enrolled Agent Status, https://www.irs.gov/tax-professionals/enrolled-agents/maintain-your-enrolled-agent-status (last visited March 22, 2022).

[4]  Plaintiff devotes significant portions of his pleadings and supporting affidavit to alleging wrongdoing by various IRS employees, culminating in allegations that there is "a group of rogue IRS employees who have implicitly entered into an agreement to unlawfully retaliate against me" and who "unlawfully initiated an unauthorized investigation into my license for specious reasons with the specific intent to harass and retaliate against me," among other claims. Declaration of John Anthony Castro ("Pl.'s Decl.") ¶¶ 53, 54, ECF No. 17-1; *see also id.* ¶¶ 55–64 (asserting various "concerns" about the reason for the alleged revocation of EA license); *id.* ¶¶ 25–34 (alleging wrongdoing by various IRS employees); Pl.'s Cross-Mot. & Opp'n at 2–3 (same).  These issues are not before the Court in this matter, which addresses *only* the IRS's compliance with FOIA in response to two FOIA requests by Plaintiff.

(a) All emails sent or received by Tony Woods concerning John Anthony Castro from January 2019 through February 2020;

(b) All email in the possession of the IRS, regarding John Anthony Castro from January 1, 2019 through February 28, 2020; and

(c) All email in the possession of the IRS regarding Enrolled Agent License #00110411 from January 1, 2019 through February 28, 2020.

Compl. Ex. A, First FOIA Request at 1.  On April 25, 2020, Plaintiff submitted to the IRS a second

FOIA request ("Second FOIA Request"), seeking:

(a) all records, excluding emails, sent or received by Tony Woods concerning John Anthony Castro from January 2019 to February 2020;

(b) all records, excluding emails, including text, fax, notes in the possession of the IRS mentioning either John Anthony Castro or Enrolled Agent License #0010411;

(3) all records, excluding emails, but consisting of a log or electronic records of incoming and outgoing phone calls for the office telephone of Tony Woods, IRS employee;

(4) all records, excluding emails, but including all other forms of records including text messages or internal messaging specifically mentioning the names John Anthony Castro and Tony Woods;

(5) all records, excluding emails, but including all other forms of records including memoranda, text messages or internal messaging specifically mentioning the name Tony Woods and EA License #0110411.

Compl., Ex. B, Second FOIA Request at 1–2.  Both parties agree that Plaintiffs' FOIA Requests

seeking overlapping categories of records which can be streamlined into three categories:

*Category 1:* "All email" "concerning or regarding" John Anthony Castro or Enrolled Agent License #00110411, including all emails "sent or received by Tony Woods";

> ***Category 2:*** "All records, excluding emails," "mentioning" John
> Anthony Castro or Enrolled Agent License #00110411, including
> any records also "mentioning the name Tony Woods";
>
> ***Category 3:*** "[A]ll records, excluding emails, but consisting of a
> log or electronic records of incoming and outgoing phone calls for
> the office number of Tony Woods, IRS employee."

*See* Def.'s Mot. at 7; Pl.'s Cross-Mot. & Opp'n at 6.

In addition to identifying the types of records requested, Plaintiff's FOIA requests provide

the following identical "Information Helpful to the IRS in fulfilling this Request":

> Mr. John Anthony Castro is an enrolled agent, license number
> #00110411.  His license as an enrolled agent was impermissibly
> cancelled and later reinstated by the IRS and he is filing this FOIA
> request to learn more about the email that the IRS has on the
> activities of the IRS in connection with this matter

First FOIA Request at 2; Second FOIA Request at 2.  In addition, both FOIA requests identify as

the pertinent "Time Frame of this Request": "The time for records sought by this FOIA request is

for all records . . . . created or received between January 1, 2019 and February 28, 2020."  First

FOIA Request at 2; Second FOIA Request at 2.

The IRS conducted a search for responsive records, which is detailed *infra* Section III(A).

The IRS's search yielded 143 pages of "responsive records."  *See* Def.'s Mot. at 2; Declaration of

Timothy Ritter ("Ritter Decl.") ¶ 69, ECF No. 13-2.  Of those responsive materials, eleven pages

were released with partial redactions based on FOIA Exemptions 3, 6, 7(A), and 7(C).  *Id.*

The IRS has now moved for summary judgment, arguing that the agency has "performed

a reasonable search for records responsive to [P]laintiff's FOIA request; and . . . has properly

applied the FOIA's Exemptions to disclosure."  Def.'s Mot. at 1.  The IRS has submitted

declarations of Timothy Ritter, Vikramsing Barad, Rachel Erath, and Joseph E. Hunsader.  *See*

Ritter Decl.; Declaration of Vikramsing Barad ("Barad Decl."), ECF No. 13-4; Declaration of

Rachel Erath ("Erath Decl."), ECF No. 19-2; Declaration of Joseph E. Hunsader ("Hunsader

Decl."), ECF No. 19-3.  Plaintiff has filed a cross-motion for summary judgment, arguing that the IRS has failed to conduct an adequate search.  *See* Pl.'s Cross-Mot & Opp'n at 11–16.  Plaintiff also contests the propriety of Defendant's reliance on Exemptions 3 and 7(A), but does not challenge the IRS's withholdings under Exemptions 6 and 7(C).  *See id.* at 16, 17–22.  Plaintiff seeks an order compelling the IRS "to conduct additional searches, provide more detailed descriptions of its searches and more detailed justifications for its withholdings, and release any non-exempt portions of responsive records to Plaintiff."  *Id.* at 21.  The parties' cross-motions are fully briefed and ripe for this Court's review.

## II.    LEGAL STANDARD

Congress enacted the Freedom of Information Act, 5 U.S.C. § 552, to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted).  Congress remained sensitive to the need to achieve balance between these objectives and the potential that "legitimate governmental and private interests could be harmed by release of certain types of information."  *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (en banc) (citation omitted), *cert. denied*, 507 U.S. 984 (1993).  To that end, FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions for categories of material."  *Milner v. Dep't of Navy*, 131 S. Ct. 1259, 1261–62 (2011).  Ultimately, "disclosure, not secrecy, is the dominant objective of the act."  *Rose*, 425 U.S. at 361.  For this reason, the "exemptions are explicitly made exclusive, and must be narrowly construed."  *Milner*, 131 S. Ct. at 1262 (citations omitted).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood*

*v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)).  "The agency is entitled to summary judgment if no material facts are genuinely in dispute and the agency demonstrates that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Prop. of the People, Inc. v. Off. of Mgmt. & Budget*, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (citation omitted); *see also* Fed. R. Civ. P. 56(a).  When an agency invokes an exemption to disclosure, district courts must "determine *de novo* whether non-disclosure was permissible." *Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015).

The burden is on the agency to justify its response to the plaintiff's request.  5 U.S.C. § 552(a)(4)(B).  "An agency may sustain its burden by means of affidavits, but only if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (citation omitted).  "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Am. Civil Liberties Union v. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011) (citations omitted).  "Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail." *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011) (citation omitted).  With these principles in mind, the Court turns to the merits of the parties' cross-motions for summary judgment.

## III.   DISCUSSION

The Court's analysis proceeds in two parts.  First, the Court will address the adequacy of the IRS's search in response to Plaintiff's FOIA requests.  Next, the Court will consider the propriety of the IRS's claimed FOIA exemptions.

## A.  ADEQUACY OF THE SEARCH

The Court begins by addressing the parties' competing assertions regarding the adequacy of the IRS's search in response to Plaintiff's FOIA requests.  To do so, the Court will first describe the nature of IRS's search for responsive records.  Then, the Court will evaluate the adequacy of that search, considering Plaintiff's various objections.

Before doing so, the Court observes that Plaintiff—for the first time in his Reply— challenges the IRS's interpretation of the scope of his FOIA requests.  Pl.'s Reply at 3–9.[5] Although the Court may, in its discretion, ignore arguments raised for the first time in a reply, *see Lu v. Lezell*, 45 F. Supp. 86, 91 (D.D.C. 2014), the Court shall briefly address them here, as it must "ascertain the scope of the [FOIA] request" to "assess the adequacy of the agency's search." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 889 (D.C. Cir. 1995).

Plaintiff concedes his FOIA requests both include an "express time limitation" as to the records he was seeking, but he claims that the IRS inappropriately tailored its search based on the information Plaintiff *himself* provided in the section entitled "Information Helpful to the IRS in fulfilling this Request, " *see* Pl.'s Reply at 5—specifically that he was seeking the "email that the IRS has on the activities of the IRS *in connection with*" his EA license being "impermissibly cancelled and later reinstated[,]" First FOIA Request at 2; Second FOIA Request at 2 (emphasis added).  He argues that the records listed under the "Request" subheading of each request are

---

[5] As Plaintiff's Reply does not contain page numbers, the Court's citations to Plaintiff's Reply refer to the page numbers generated by the ECF header.

broader, and that the IRS should have relied solely on those items and *not* the "useful information" he provided in each request.  *See* Pl.'s Reply at 6 ("Plaintiff expressly made much broader requests in the "Request" sections of his FOIA request letters.").  The IRS indicates that, absent the scope limitation contained in the "useful information" sections of Plaintiff's FOIA requests, it would have considered the requests "too indefinite to be processed" for their failure to "reasonably describe the records being requested."  *See* Def.'s Mot. at 8, n.10; Ritter Decl. ¶¶ 40–44.

Although "an agency . . . has a duty to construe a FOIA request liberally," *Nation Magazine*, 71 F.3d at 890, it is also "bound to read [the request] as drafted," *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984).  "[A]n agency need not respond to overly broad and unreasonably burdensome requests." *Judicial Watch v. Dep't of State*, 681 F. App'x 2, 4 (D.C. Cir. 2017) (citing *Am. Fed'n of Gov't Emps. v. Dep't of Commerce*, 907 F.2d 203, 208–09 (D.C. Cir. 1990)).  Here, Plaintiff is suggesting that the IRS should have ignored *his own* description of the records he sought. This argument makes little sense.  The Court agrees that IRS's interpretation of the scope of Plaintiff's requests as seeking records "in connection with" the alleged cancellation of his EA license was not only reasonable, but also appropriate in light of Plaintiff's inclusion of this information in his requests, and the IRS's duty to read a FOIA request "as drafted."

### 1.  Description of the IRS's Search

In support of its argument that it has conducted an adequate search for records responsive to Plaintiff's FOIA Requests, the IRS has submitted declarations of Timothy Ritter and Rachel Erath.  Mr. Ritter is a Government Information Specialist for the IRS, who works in the office of Government Liaison, Disclosure & Safeguards.  Ritter Decl. ¶ 1.  In that role, Mr. Ritter processes FOIA requests submitted to the IRS.  *Id*. ¶ 2.  He was assigned to process Plaintiff's FOIA Requests

at issue in this case.  *Id.* ¶ 29.   Ms. Erath serves as the FOIA coordinator for the IRS's Return

Preparer Officer ("RPO").  Erath Decl. ¶ 4.

    Upon review of Plaintiff's FOIA requests, Mr. Ritter determined that they contained

overlapping requests, which could be consolidated into the three categories noted *supra* Section I.

Mr. Ritter also reviewed the information provided by Plaintiff as "Helpful to the IRS in fulfilling

this Request" and the "Time Frame of the Request."  Ritter Decl. ¶ 39; *see supra* Section I.  Mr.

Ritter attests that he "incorporated and relied upon the express scope and time limitations"

provided in Plaintiff's requests, specifically that the "time for records sought by this FOIA request

is for all records. . . created or received between January 1, 2019 and February 28, 2020" and that

Plaintiff was seeking records to "learn more about the email that the IRS has on the activities of

the IRS in connection" with his "license as an enrolled agent [being] impermissibly cancelled and

later reinstated."  Ritter Decl. ¶¶ 39, 43.[6]  Mr. Ritter's ensuing search proceeded along two tracks,

which the Court next describes.

### a) Anthoinette Wood

    Mr. Ritter first attempted to identify a male IRS employee or contractor named "Tony

Woods," who may have had any interaction with an IRS enrolled agent, but none of the individuals

named "Tony Woods" whom Mr. Ritter located appeared likely to have had any records related to

EAs or EA credentials.  *See* Ritter Decl. ¶¶ 46–47.  Mr. Ritter contacted Plaintiff's attorney, who

indicated that he believed "Tony Woods" was a female IRS employee.  *See id.* ¶¶ 48–50.  With

this information, Mr. Ritter located a female IRS employee named "Anthoinette Wood," who

works as a Territory Manager in the Stakeholder Partnerships & Education Communication

("SPEC') office.  *See id.* ¶¶ 51–53.  Mr. Ritter sent Plaintiff's two FOIA requests to Ms. Wood to

---

[6] Mr. Ritter's declaration contains two paragraphs numbered "43."  This citation refers to the paragraph at the top of page 12 of Mr. Ritters declaration.

determine if she had any responsive records; she informed Mr. Ritter that she did not.  *Id.* ¶ 54. Mr. Ritter also contacted Ms. Wood's manager in SPEC, Ms. Tracey Walker Carter. *Id.* ¶¶ 61–62. Mr. Ritter sent a formal search memorandum to Ms. Walker Carter, attaching Plaintiff's FOIA requests, and requesting that she search for and provide potentially responsive records.  *Id.* ¶ 63. Ms. Walker Carter provided a set of potentially responsive records to Mr. Ritter on August 18, 2020.  *Id.* ¶ 64.

**b)  IRS's Return Preparer Office**

Mr. Ritter separately contacted the IRS's Return Preparer Office ("RPO"), which oversees enrollment programs, including enrollment for Enrolled Agents.  Ritter Decl. ¶¶ 56–57.  Within the RPO, the Enrolled Agent Policy and Management ("EAP&M") department is "devoted to Enrolled Agents."  *Id.* ¶ 56.  Mr. Ritter determined that the RPO—"especially its EAP&M Department"—would be "the repository for records relating to the initial enrollment, renewal, revocation, cancellation, reinstatement, *etc.*, of an individual's Enrolled Agent credential."  *Id.*; *see also* Erath Decl. ¶ 13 ("EAP&M oversees the issuance, renewal, and status of an individual's Enrolled Agent credential/license.").  On July 23, 2020, Mr. Ritter contacted Ms. Erath, sent her a formal search memorandum attaching Plaintiff's FOIA requests, and requested that RPO search for potentially responsive records.  Ritter Decl. ¶ 58.

Ms. Erath's Declaration details the search conducted by RPO for records responsive to Plaintiff's FOIA requests.  Ms. Erath explains that the RPO "maintains electronic systems with records relating to the issuance, renewal, and status of an individual's Enrolled Agent license." Erath Decl. ¶ 13.  Mr. Erath attests that she is "very familiar" with the "various electronic/computer systems and databases maintained by the RPO," having been employed by the IRS since 1991 and by RPO since 2011.  *Id.* ¶¶ 1, 2, 15.

Ms. Erath searched RPO's "e-Trak Practitioner" database for Plaintiff's name.  *Id.* ¶ 21.
She explains that e-Trak Practitioner "includes a module that houses and maintains Enrolled Agent
data," which is organized by a "folder and subfolder system" containing information for a
particular Enrolled Agent.  *Id.* ¶ 16.  Based e-Trak Practitioner's organizational system, "[o]nce a
particular Enrolled Agent's information is accessed," then that individual's "electronic e-Trak
Practitioner folder includes further subfolders entitled: (1) Practitioner Documents; (2) Enrollment;
(3) Renewal; (3) CAF Information ; (4) Business Information; (5) Address; and (6) Call Log."  *Id.*
¶ 18.  Ms. Erath explains that to "locate particular RPO records relating to a particular Enrolled
Agent," a searcher can "drill down" into "additional levels" in the folder structure" for additional
records.  *Id.* ¶ 19.

According to Ms. Erath, e-Trak Practitioner stores all information submitted to RPO by
Enrolled Agents and other practitioners, including information submitted "electronically via
[RPO's] Internet portal, via Fax, or via physical mail[.]"  *Id.* ¶ 24; *see also id.* ¶ 25 ("[A]ll submitted
information—regardless of the method of delivery to the RPO—is uploaded into e-Trak
Practitioner.").  Because RPO stores all submitted records on e-Trak Practitioner, any "paper
records would be duplicative with the electronic information housed" on that database.  *Id.* ¶ 26.

Ms. Erath queried e-Trak Practitioner with Plaintiff's name, which "returned numerous
records that [she] thereafter reviewed for responsiveness."  *Id.* ¶¶ 21, 23.  Mr. Erath avers that
querying Plaintiff's "Enrolled Agent license number" would have "access[ed] the very same
e-Trak Practitioner electronic folder (including the same subfolder structure) that [she] accessed
via querying e-Trak Practitioner with [P]laintiff's name."  *Id.* ¶ 22.

Ms. Erath also contacted Wilbrena Lyons-Thomas, Director of EAP&M, to confirm
whether "there might be any additional responsive paper records relating to Plaintiff."  *Id.* ¶ 27.

Ms. Lyons-Thomas referred Ms. Erath to Tish Summers, a Supervisory Management Analyst at EAP&M's "primary location" in Detroit Michigan.  *Id.*  All of the records Ms. Erath received in response to these inquiries to Ms. Lyons-Thomas and Ms. Summers were duplicative of records that Ms. Erath had located in her search of e-Trak Practitioner, or were created before January 1, 2019 (and were therefore outside the time frame of Plaintiffs' Requests, *see supra* Section I).  *Id.* ¶ 27.  Ms. Erath sent all "potentially responsive" she identified to Mr. Ritter.  *Id.* ¶ 28.

***

Mr. Ritter attests that the IRS identified 143 pages of records responsive to Plaintiff's FOIA Requests.  Ritter Decl. ¶ 69.  He also avers that he is "unaware of any other IRS business units or IRS employee or contractor who would likely have records responsive to [P]laintiff's FOIA requests," beyond what is described above.  *Id.* ¶ 71.

### 2.  The IRS's Search Was Adequate

Having described the scope and methodology of the IRS's search, the Court will now assess its adequacy in response to Plaintiff's FOIA requests.  The Court will then address each of Plaintiff's objections to the IRS's search.

#### a)  The IRS's Search Was Reasonably Calculated to Produce Responsive Records

An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was "reasonably calculated to uncover all relevant documents."  *Valencia-Lucena v. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (internal quotation marks omitted).  "The agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Id.* at 326 (internal quotation and alterations omitted).  "The agency cannot limit its search to only one or more places if there are additional sources that are likely to turn up the information requested." *Id.* (internal quotations omitted).  "In a suit seeking agency documents . . . at the summary

judgment stage, where the agency has the burden to show that it acted in accordance with the statute, the court may rely on a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Chambers v. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009) (internal quotations omitted).

The IRS's search for records responsive to Plaintiff's FOIA requests was adequate.  As described above, the declarations provided by Mr. Ritter and Ms. Erath detail the agency's efforts to locate records responsive to the categories identified by Plaintiff—including efforts to identify the appropriate IRS employee (whom Plaintiff apparently misnamed in his FOIA requests).  Ms. Erath's Declaration, in particular, explains the scope and contents of the databases searched, and the Court may rely on such "authoritative" agency databases as part of a reasonable search for responsive records.  *See Kilmer v. Customs & Border Protection*, Civil Action No. 17-1566 (CKK), 2021 WL 1946392, at *9 (D.D.C. May 14, 2021); *Long v. ICE*, 149 F. Supp. 3d 39, 60 (D.D.C. 2015).

Moreover, the "reasonableness" of IRS's FOIA search "is necessarily 'dependent upon the circumstances of the case.'"  *Swick v. Dep't of the Army*, 471 F. Supp. 3d 246, 251 (D.D.C. 2020) (quoting *Davis v. Dep't of Justice*, 460 F.3d 92, 103 (D.C. Cir. 2006)).  During the time period identified in Plaintiff's FOIA Requests, the IRS employed 70,000 across many business units.  *See* Def.'s Reply & Opp'n at 4 n.4.  Any suggestion that some sort of "search" could be run across all records maintained by the IRS is unfounded.  *See* Pl.'s Reply at 9.  Moreover, Plaintiff explicitly indicated that he was seeking records "in connection" with his claim that his enrolled agent license was "impermissibly cancelled" and "later reinstated" and associated with a particular IRS

employee.  *See* First FOIA Request at 1; Second FOIA Request at 1.  The steps taken by Mr. Ritter

and Ms. Erath demonstrate reasonable efforts to identify such responsive records.

Altogether, the IRS's response to Plaintiff's FOIA requests reflects the agency's "good

faith effort to conduct a search for the requested records, using methods which [could] be

reasonably expected to produce the information requested."  *Oglesby v. Dep't of Army*, 920 F.2d

57, 68 (D.C. Cir. 1990); *see also Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 10 (D.D.C.

2009) (finding agency search adequate where supporting declarations described the searches

performed, the databases and ports of entry implicated, and the search terms employed).

**b) Plaintiff's Objections to the IRS's Search are Unpersuasive**

Plaintiff has asserted several objections to the adequacy of the IRS's FOIA search, each of

which the Court addresses below.  None of these objections undermine the overall adequacy and

reasonableness of the IRS's FOIA search.

*i.  Plaintiff's Name & EA License Number*

First, Plaintiff contends that the IRS's search was inadequate because Mr. Ritter did not

indicate in his declaration that the IRS had searched for Plaintiff's name or "EA license number"

in any "IRS database."  Pl.'s Cross-Mot. & Opp'n at 12.  Ms. Erath's declaration rebuts these

points; Mr. Erath attests that she queried the relevant internal database for Plaintiff's name, and

that an additional query for his license number would have produced the same results.  *See supra*

Section II(A)(1)(b).  Accordingly, this objection does not undermine the adequacy of the IRS's

search.

*ii.  Search of the IRS's Large Business & International ("LB&I") Division*

Plaintiff next argues that the IRS's search was inadequate because it failed to search the

Large Business & International Division ("LB&I") for responsive records.  *See* Pl.'s Cross-Mot.

& Opp'n at 14.  Plaintiff suggests that such a search would have been appropriate because he "regularly represents clients on international tax issues" before this division.  *Id.*  But both of Plaintiff's FOIA requests indicate that he is seeking materials regarding the alleged cancellation of his *EA* credential—*not* records related to his representation of clients before the LB&I.  The IRS notes that RPO is the appropriate IRS unit responsible for maintaining records related to an EA's credential.  *See* Def.'s Reply & Opp'n at 8 (citing Ritter Decl. ¶ 56; Erath Decl. ¶¶ 12–13).  Accordingly, this objection fails to undermine the adequacy of the IRS's search.

Relatedly, Plaintiff claims that the IRS failed to search emails of LB&I employees whose names appear on email communications that the IRS *did* produce to Plaintiff in response to his FOIA requests.  *See* Pl.'s Cross-Mot. & Opp'n at 14–15.  He cites an email communication indicating that Ms. Wood was previously employed by LB&I (before SPEC, *see supra* Section III(A)(1)(a)), but that the IRS did not "conduct a follow-up search after encountering evidence of Ms. Wood's employment with LB&I during the relevant time period of Plaintiff's requests."  Pl.'s Cross-Mot. & Opp'n at 15.  The IRS responds that the very email cited by Plaintiff is from the relevant time period, during Ms. Wood's tenure at LB&I—in other words, its search *did* locate records relating to her employment in LB&I in 2019.  *See* Def.'s Reply & Opp'n at 9.  Therefore, Plaintiff's objection on this point is unpersuasive.

Plaintiff also argues that the IRS "did not follow up with [three] additional IRS employees" in LB&I whose names appear on correspondence that was produced to him in response to his FOIA requests.  Pl.'s Cross-Mot. & Opp'n at 15.  However, Plaintiff offers only conclusory speculation that searches of these employees would have yielded records responsive to his FOIA requests— which explicitly sought information related to the cancellation of his EA credential.  Absent any "countervailing evidence," Plaintiff's mere speculation that the additional email recipients "might"

have additional responsive information is insufficient to undermine the Court's finding that IRS conducted a reasonable search for records responsive to his FOIA requests. *See, e.g., Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994) (concluding a plaintiff's "mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them").

       *iii.*    *Alleged Failure to Produce Certain Specific Records*

Finally, Plaintiff argues that the IRS's failure to produce several specific documents undermines the adequacy of its search. *See* Pl.'s Cross-Mot. & Opp'n at 12–13, 15–16. As an initial point, the adequacy of the search is "determined not by the fruits of the search, but by the appropriateness of [its] methods." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citation omitted); *Kowal v. United States Dep't of Just.*, 464 F. Supp. 3d 376, 382 (D.D.C. 2020) (explaining that an agency's search is "judged by whether it was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant"). In any event, the IRS refutes each of Plaintiff's arguments about specific records. For example, Plaintiff contends that the IRS did not produce to him proof of reinstatement of his EA credential as of January 31, 2020. In response, Ms. Erath attests that the IRS does not retain as a matter of course copies of the "routine Form 22B letter[s]" issued to EAs who renew their credentials. *See* Def.'s Reply & Opp'n at 6; Erath Decl. ¶¶ 29–30.

Next, Plaintiff contends that the IRS did not produce to him emails from Plaintiff to two separate IRS Revenue Agents dated April 13, 2019 and May 31, 2019. *See* Pl.'s Cross-Mot. & Opp'n at 13. However, Plaintiff's own descriptions of these communications fail to show how they would have been responsive to his FOIA requests. He describes the first as an email he sent to "inform" an IRS Revenue Agent about "the IRS Restructuring and Reform Act . . . which

16

demands termination of any IRS employee [who] . . . harass[es] a taxpayer representative." *Id.*; *see* Pl.'s Decl. ¶ 30.  The second emails involves a complaint by Plaintiff regarding alleged wrongdoing by a different IRS Agent in connection with one of Plaintiff's clients.  *See* Pl.'s Cross-Mot. & Opp'n at 13; Pl.'s Decl. ¶ 33.  *Neither* description provides any indication that either communication would have been responsive to his FOIA requests, and so their absence from the IRS's production of records does not undermine the reasonableness of its search.

Plaintiff also argues that the IRS failed to produce records of Plaintiff's alleged phone call with an IRS employee who "held herself out to be Toni Wood, associated with the IRS Office of Professional Responsibility."  Pl.'s Cross-Mot. & Opp'n at 13.  As the IRS correctly notes, Plaintiff "does not show that any responsive record had ever been created, much less retained."  Def.'s Reply & Opp'n at 7.  This objection, therefore, also fails.

Finally, Plaintiff claims that the IRS failed to produce to him a fax cover sheet indicating the IRS's receipt of Plaintiffs certification that he had completed continuing education requirements for his EA license.  *See* Pl.'s Cross-Mot. & Opp'n at 15–16.  He claims that the IRS produced "the EA Certificates of Completion" but "not the fax cover sheet enclosing those certificates."  *Id.* at 16.  Again, Plaintiff fails to demonstrate how this fax cover sheet would have been responsive to his FOIA request, and therefore fails to undermine the adequacy of the IRS's search.

\*\*\*

In sum, the IRS has demonstrated that its FOIA search was "reasonably calculated" to retrieve documents responsive to Plaintiff's FOIA request.  Plaintiff's objections fail to undermine the adequacy of the IRS's efforts.  Accordingly, the Court shall grant summary judgment on this ground, in favor of the IRS, as to the adequacy of its FOIA search.

**B.  FOIA EXEMPTIONS**

Next, the parties dispute whether the IRS properly redacted information pursuant to several FOIA exemptions.  Of the 143 pages of responsive records produced by the IRS to Plaintiff, the IRS has applied redactions to eleven pages pursuant to Exemptions 3, 6, 7(A), and 7(C).  *See* Def.'s Mot. at 15; Barad Decl. ¶ 5, 9, 25, 41.  Plaintiff does not contest the IRS's redactions made under Exemptions 6 or 7(C).  *See* Pl.'s Cross-Mot. & Opp'n at 16.  Therefore the parties' remaining disputes pertain to: (1) redactions on nine (9) pages under Exemption 7(A), Exemption 3, and 26 U.S.C. § 6103(e)(7); and (2) redactions on four (4) pages under Exemption 3 and 26 U.S.C. § 6103(a) and (b).[7]  *See* Def.'s Mot. at 15; Pl.'s Cross-Mot. & Opp'n at 16.  The Court shall address each category of disputed exemptions, but shall first address Plaintiff's arguments regarding the IRS's compliance with *Vaugh v. Rosen*, 484 F.3d 820 (D.C. Cir. 1973).

An agency bears the burden of justifying its withholdings of materials responsive to a FOIA request.  5 U.S.C. § 552(a)(4)(B); *see also Nat. Res. Def. Council v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000) ("FOIA itself places the burden on the agency to sustain the lawfulness of specific withholdings in litigation.").  To satisfy this burden, "an agency *may* rely on detailed affidavits, declarations, a *Vaughn* index, in camera review, *or a combination of these tools.*"  *Elec. Frontier Found. v. Dep't of Justice*, 57 F. Supp. 3d 54, 59 (D.D.C. 2014) (emphases added) (quoting *COMPTEL v. FCC*, 910 F. Supp. 2d 100, 111 (D.D.C. 2012)).  Although agencies often provide a *Vaughn* index to justify their withholdings, they are not required to do so.  *See, e.g.*, *Williams & Connolly LLP v. Comptroller of the Currency*, 39 F. Supp. 3d 82, 94 (D.D.C. 2014) ("Submission of a *Vaughn* index is not mandatory."); *Pub. Inv'rs Arbitration Bar Ass'n v. SEC*, 930 F. Supp. 2d 55, 71 (D.D.C. 2013) (finding sufficient agency's declaration—submitted

---

[7] As indicated *infra* Section III(B)(2), it appears Plaintiff is no longer contesting these particular redactions.  The Court shall address this point in its discussion below.

in lieu of a *Vaughn* index—which "explains the nature of the withheld documents and the factual basis for withholding those documents"); *Tax Analysts v. IRS*, 414 F. Supp. 2d 1, 4 (D.D.C. 2006) (*Vaughn* index not required where the agency supplied a "declaration outlining the categories of documents withheld").

Here, the IRS has relied on affidavits in support of its claimed exemptions.  A court may grant summary judgment based on the agency's declarations "[i]f an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith."  *Am. Civil Liberties Union*, 628 F.3d at 619.  This framework guides the Court's analysis of whether the IRS has satisfied its burden of demonstrating that it properly withheld portions of 11 pages of records.

1.  **Nine Pages Redacted Pursuant to Exemption 7(A), Exemption 3 and 26 U.S.C. § 6103(e)(7)**

The IRS invokes Exemptions 7(A) and 3 "in conjunction with" 26 U.S.C. § 6103(e)(7) to justify its redactions to nine pages of responsive records.  *See* Def.'s Mot. at 15–21.  According to Mr. Barad's affidavit, the IRS redacted information from:

- Document Control Numbers 4, 136, and 137, which are "Call Log Listings" that "include potential evidence that might be used in a proceeding against the plaintiff, including communications with third-parties relating to plaintiff," Barad Decl. ¶ 12;

- Document Control Number 134, which is an "'e-track Practitioner' printout that identities the initiation date of the IRS['s] investigation(s) of plaintiff," *id.*  ¶ 13; and

- Document Control Numbers 138, 139, 140, 141, 142, which are emails containing "material concerning the relation of an investigation of plaintiff to other matters, references to particular documents with evidentiary significance for a proceeding against the plaintiff, particular actions by plaintiff that have been/are being investigated by the IRS and possible planned future investigatory actions by the IRS," *id.* ¶ 14.

As the IRS argues that each FOIA exemption supplies an independent basis for withholding the information at issue, the Court addresses each in turn. *See* Def.'s Opp'n & Reply at 11.

### a) Exemption 7(A)

Under Exemption 7(A), "records or information compiled for law enforcement purposes" are exempt from disclosure under FOIA to the extent the disclosure of those materials "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). To rely on this exemption, the agency must show, first, the existence of a "concrete prospective investigation" or an investigation that is "pending or reasonably anticipated." *Boyd v. Crim. Div. of U.S. Dep't of Justice*, 475 F.3d 381, 386 (D.C. Cir. 2007). Next the government must show that disclosure "could reasonably be expected perceptibly to *interfere*" with the enforcement proceeding. *North v. Walsh*, 881 F.2d 1088, 1097 (D.C. Cir. 1989).

Exemption 7 may be invoked both by "agencies whose principal function is criminal law enforcement" and by agencies with both "administrative and law enforcement functions," including the IRS. *Tax Analysts v. IRS*, 294 F.3d 71, 77 (D.C. Cir. 2002); *see also Agrama v. IRS*, 282 F. Supp. 3d 264, 274 (D.D.C. 2017) ("IRS tax examinations constitute 'law enforcement' investigations[.]"). A district court may grant summary judgment to a government agency claiming Exemption 7 when "the agency affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed." *Juarez v. Dep't of Justice*, 518 F.3d 54, 58 (D.C. Cir. 2008) (quoting *King v. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987)). The agency is not required to make a "specific factual showing with respect to each withheld document that disclosure would actually interfere with a particular enforcement proceeding." *Agrama*, 282 F. Supp. 3d at 273–74 (internal citation and quotation marks omitted).

"Rather, federal courts may make generic determinations that, 'with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally interfere with  enforcement proceedings.'" *Id.* (internal citation and quotation marks omitted).

Here, the IRS relies on Mr. Barad's declaration to demonstrate the existence of an ongoing investigation; he attests that the redacted portions of the above-listed documents "contain[ ] information relevant to a law enforcement matter which is not yet concluded, *i.e.*, an investigation regarding plaintiff's activities as an Enrolled Agent." Barad Decl. ¶ 17.  Plaintiff argues that the IRS has failed to demonstrate that there is any "ongoing investigation" regarding his "activities" as an EA because his license was "reinstated" in January 2020.  Pl.'s Cross-Mot. & Opp'n at 18, 19.  The IRS responds that Plaintiff misunderstands Mr. Barad's representation made under oath; Mr. Barad attest that there is an "investigation regarding Plaintiff's *activities* as an EA," *not* an "investigation regarding the status of Plaintiff's [EA] *credential.*"  Def.'s Reply & Opp'n at 13 (emphasis added).  Plaintiff's speculation does not rebut the information confirmed in Mr. Barad's affidavit that the redacted information pertains to an ongoing IRS investigation into his "activities as an EA."  Barad Decl. ¶ 17.  The IRS, therefore, has satisfied its burden of demonstrating the first requirement of Exemption 7(A).  *See Juarez*, 518 F.3d at 58 (relying on agency affidavits which "confirm that the [agency's] investigation remains ongoing").

The IRS has also demonstrated that release of the redacted portions of these documents could reasonably be expected to interfere with enforcement proceedings, specifically by "prematurely revealing the IRS' evidence and/or strategy; revealing the history, nature, direction, scope or focus of the investigation; and by giving plaintiff premature insight into the strength of the IRS' position and/or reliance on certain evidence." Barad Decl. ¶ 18.  The IRS further asserts

that release of the withheld information would enable the plaintiff to attempt to alter or destroy records that the IRS has not yet obtained, or to create or backdate documents, or to contact potential witnesses and possibly alter their testimony." *Id.* Plaintiff does not contest either point. *See* Pl.'s Cross-Mot. & Opp'n at 18–19.

Instead, Plaintiff argues (for the first time in his Reply) that the Court should not rely on the IRS's affidavits in assessing its withholdings because "the facts in this case strongly indicate evidence of bad faith within the agency," specifically that "agents of the IRS's LB&I division started a retaliatory investigation into Plaintiff because of his formal and informal complaints against his agents." Pl.'s Reply at 17, 22. The Court disagrees that the "facts" on the record evidence bad faith on behalf of the IRS. Accordingly, the Court upholds the IRS's withholding of certain portions of the above-listed documents pursuant to Exemption 7(A).

### b) Exemption 3 and 26 U.S.C. § 6103(e)(7)

The IRS also argues that Exemption 3 and 26 U.S.C. § 6103(e)(7) supply an independent basis for the same redacted information contained on the nine pages of records listed above. *See* Def.'s Mot. at 19–21. FOIA Exemption 3 applies to matters that are "specifically exempted from disclosure by [another] statute" if that statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Here, the IRS invokes 26 U.S.C. § 6103(e)(7). "That [section] 6103 is the sort of nondisclosure statute contemplated by FOIA exemption 3 is beyond dispute." *Sea Shepherd Conserv. Soc'y v. IRS*, 89 F. Supp. 3d 81, 98 (D.D.C. 2015) (quoting *Tax Analysts v. IRS*, 117 F.3d 607, 611 (D.C. Cir. 1997)).

Section 6103(e)(7) states that "[r]eturn information with respect to any taxpayer may be open to inspection by or disclosure to any person authorized by this subsection to inspect any return of such taxpayer *if* the Secretary determines that such disclosure would not seriously impair Federal tax administration." § 6103(e)(7) (emphasis added). "Congress provided a deliberately sweeping definition of 'return information' in section 6103 in order to effectuate the statute's core purpose of protecting taxpayer privacy." *Sea Shepherd Conserv. Soc'y v. IRS.*, 208 F. Supp. 3d 58, 86 (D.D.C. 2016) (internal quotation marks omitted) (quoting *Landmark Legal Found. v. IRS*, 267 F.3d 1132, 1135–36 (D.C. Cir. 2001); *Tax Analysts*, 117 F.3d at 615). "Return information" is defined as:

> [A] taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense ....

26 U.S.C. § 6103(b)(2)(A). The IRS argues that the information redacted from the nine pages of records at issue falls within the broad definition of "return information" because it "consists [of] information received by, recorded by, prepared by, furnished to, or collected by the Secretary of the Treasury with respect to a return or with respect to the determination of the existence, or possible existence, of tax, penalty, or other plaintiff liability." Def.'s Mot. at 20 (citing Barad Decl. ¶¶ 20–21). Plaintiff does not contest that the information at issue is "return information"; he challenges only the IRS's assertion that its release would "seriously impair Federal tax administration." Pl.'s Cross-Mot. & Opp'n at 20–21.

The IRS's justification that release of the redacted information would impair tax administration is similar to its rationale for its Exemption 7(A) claims; according to the IRS, "[r]elease of the withheld information would 'seriously impair Federal tax administration' because it would allow [P]laintiff access to information about the IRS's investigation, craft explanations or defenses based upon that knowledge, and thereby thwart or seriously impeded the IRS['s] investigation."  Def.'s Mot. at 20–21 (citing Barad Decl. ¶ 24); *see also* Def.'s Reply & Opp'n at 14 ("[H]ere there is an ongoing investigation of Plaintiff . . . [which] justifies the IRS's withholding records under Exemption 3).  As the Court finds that the IRS has provided sufficient detail to demonstrate that Plaintiff is under investigation by the IRS, and that disclosure of the redacted portions of these 9 pages of records would impair its investigation, *see supra* Section III(B)(1)(a), it also finds that the IRS has discharged its obligation to demonstrate that the redacted information would "seriously impair Federal tax administration" pursuant to § 6103(e)(7).  *See, e.g.*, *Sea Shepherd*, 208 F. Supp. 3d at 87–88.

### c) **Plaintiff's Request for *In Camera* Inspection**

In his Reply, Plaintiff requests that the Court conduct an *in camera* inspection of the nine pages of redacted records discussed in this section.  *See* Pl.'s Reply at 20–21.  FOIA "endorses the court with broad discretion" to determine whether *in camera* inspection is appropriate.  *See Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 119 (D.D.C. 2005).  "Ultimately, however, courts disfavor *in camera* inspection and it is more appropriate in only the exceptional case."  *Id.* (citing *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978) (explaining that FOIA's *in camera* review provision "is designed to be invoked when the issue before the District Court could not otherwise be resolved")).  Here, the Court concludes that *in camera* review is not necessary, as it finds the IRS's descriptions and justifications for its withholdings to be adequate.

2.  **Four Pages Redacted Pursuant to Exemption 3 and 26 U.S.C. § 6103(a), (b)**

The IRS next relies on Exemption 3 and 26 U.S.C. § 6103(a) and (b) to redact information on documents containing control numbers 4, 133, 135, and 136.   The IRS indicates that the redacted portions of these documents contained "return information," "i.e., information relating to the plaintiff's tax liability or the IRS' investigation of him."  Barad Decl. ¶ 35.  The IRS states that it withheld such "return information" because "[P]laintiff's FOIA requests were not accompanied by plaintiff's authorization that the IRS could release such 'return information' to his attorney Mr. Peter Sorenson."  *Id.* ¶ 36; *see also id.* ¶ 37 (explaining that "Plaintiff's two FOIA requests were not accompanied by any IRS Form 2848, Power of Attorney and Declaration of Representative, or Form 8821, Tax Information Authorization, by plaintiff John Anthony Castro authorizing his attorney Mr. Peter Sorenson to receive his confidential tax information.").  The IRS acknowledges that Plaintiff did provide a "declaration" with each of his FOIA requests, authorizing his attorney to "receive any records that the IRS has in response to my FOIA request," but the IRS indicates that these declarations "did not specifically authorize [P]laintiff's attorney to receive any of Plaintiff's confidential tax information that is protected by 26 U.S.C. § 6103 unless such 'return information' was responsive to plaintiff's FOIA requests."  *Id.* ¶¶ 38–39.  However, Mr. Barad attests that the redacted portions of these four pages "were all from records that fell outside" of the time period indicated in Plaintiff's FOIA request, and therefore were not "responsive" to his request—meaning that Plaintiff's authorization to release responsive information to his attorney did not extend to this information.  *See id.* ¶¶ 39–42.

In response, Plaintiff concedes that he did not submit the appropriate authorization forms to the IRS with his FOIA requests.  Pl.'s Cross-Mot. & Opp'n at 21; *see also* Pl.'s Stmt. of Facts ¶ 20, ECF No. 17-11 ("Plaintiff admits that his Declaration did not specifically authorize his attorney to receive Plaintiff's confidential tax information.").  He indicates that he has since

provided such forms, and therefore "the issue of whether Plaintiff waived his right to privacy is no longer before the Court."  Pl.'s Cross-Mot. & Opp'n at 21; *see also* Pl.'s Stmt. of Facts ¶ 20. Plaintiff also does not address these redactions in his Reply.  Accordingly, it appears that the IRS's withholdings pursuant to Exemption 3 and 26 U.S.C. § 6103(a) and (b) are no longer at issue in this case.

## C. SEGREGABILITY

Under FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b). The Court has an "an affirmative duty to consider the segregability issue *sua sponte.*"  *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007).  "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Granting the IRS its due presumption of regularity, the Court finds that the IRS has discharged its burden concerning segregability.  The IRS has not withheld in full any records, but has redacted 11 pages out of the 143 total pages produced to Plaintiff.  *See* Barad Decl. ¶ 5.  With respect to the portions of the eleven pages of redacted records, Mr. Barad attests that he has personally reviewed these records and has "confirmed that the material withheld . . . is limited to information that meets the criteria of the Exemptions cited and that no segregable material has been redacted."  *Id.* ¶ 43.  The Court is satisfied that the IRS has appropriately segregated non-exempt information which has been produced to Plaintiff.

## IV.   CONCLUSION

For the foregoing reasons set forth in this Memorandum Opinion the Court shall **GRANT** the IRS's Motion for Summary Judgment and **DENY** Plaintiff's Cross-Motion for Summary Judgment.   An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

Date: March 22, 2022